UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LINDA ROBERTS    :
    :
    v.    :    C.A. No. 14-289M
    :
CAROLYN W. COLVIN    :
Commissioner of the Social Security    :
Administration    :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on June 24, 2014 seeking to reverse the decision of the Commissioner. On November 26, 2014, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 7). On December 24, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 10). Plaintiff filed a Reply Brief on February 13, 2015. (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 7) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 28, 2011 alleging disability since October 20, 2011 (Tr. 10) due to a combination of both psychiatric and physical issues. (Tr. 143). The application was denied initially (Tr. 56-66) and on reconsideration. (Tr. 68-78). Plaintiff requested an Administrative hearing. (Tr. 91). On June 11, 2013, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 25-49). The ALJ issued an unfavorable decision to Plaintiff on June 28, 2013. (Tr. 7-23). The Appeals Council denied Plaintiff's Request for Review on April 21, 2014, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred because he failed to properly evaluate her fibromyalgia.

The Commissioner disputes Plaintiff's claims and asserts that the record does not contain any confirmed diagnosis of fibromyalgia and that substantial evidence supports the ALJ's assessment of Plaintiff's pain.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health

and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was fifty-nine years old on the date of the ALJ's decision.  (Tr. 31, 56).  She completed the ninth grade (Tr. 32) and worked in the past as an assembly line worker and a housekeeper.  (Tr. 145).

On December 5, 2011, Plaintiff complained of pain in her legs and shins.  (Tr. 208-209). Diagnoses included hypertension, mood disorder not otherwise specified, and restless legs syndrome.  Id.  On January 25, 2012, Nurse Practitioner Patricia Martino treated Plaintiff, who complained of aches and pains in her legs and arms.  (Tr. 200-201).  On physical examination, flexion and extension were limited to thirty degrees and she reported a pain score of five out of ten. (Tr. 200).  She was prescribed ibuprofen for her back pain.  Id.

On February 27, 2012, Plaintiff reported to Nurse Martino that she had chronic low back pain, but the cold weather seemed to worsen it.  (Tr. 576).  On March 26, 2012, Plaintiff reported that she had pain in her back and neck as well as other joints.  (Tr. 578).  She was taking ibuprofen with "fair effect" and was doing well.  Id.

On April 6, 2012, state agency physician Dr. Okosun Edoro, M.D. evaluated Plaintiff for complaints of low back pain; arthritis in legs, feet, toes and back; migraine headaches and vertigo. (Tr. 236-239). Plaintiff reported a ten-year history of neck and back pain, left leg pain, occasional numbness in her upper and lower extremities, vertigo and daily migraine headaches. (Tr. 236-237). She described episodes of vertigo occurring two to three times per week and lasting approximately fifteen minutes. (Tr. 237). She stated that her neck, back and leg pain were aggravated by standing or walking longer than thirty minutes; and bending and lifting more than five pounds. (Tr. 236). Plaintiff indicated that she was able to take a shower, dress herself and drive without difficulty. (Tr. 237). On examination, Dr. Edoro noted that Plaintiff walked with a normal gait although she had difficulty with heel, toe, and tandem walk due to poor balance; straight leg raising was negative; her lumbar spine was non-tender; her cervical spine was tender at C7; she had full range of motion of all joints with no swelling, redness or warmth; cervical and lumbar range of motion were diminished; and she had normal strength, sensation and reflexes throughout. (Tr. 238).

On May 22, 2012, Plaintiff saw Nurse Martino and reported ongoing leg pain. (Tr. 582). On September 11, 2012, lab work revealed an Antinuclear Antibodies (ANA) titer of 1:320 and a speckled ANA pattern and a rheumatoid factor of 51.8. (Tr. 621). On October 9, 2012, Plaintiff saw Nurse Martino for follow up. (Tr. 268-271). Her legs felt weak and painful. (Tr. 268). On physical examination, her lumbo-sacral spine range of motion was limited to thirty degrees in flexion and extension. Id. She had "abnormal ANA/rheum in setting of pain in multiple joints." (Tr. 269). On January 29, 2013, Plaintiff presented to Nurse Martino with complaints of leg and low back pain. (Tr. 255-257). She was diagnosed by Nurse Martino with a chronic pain syndrome. (Tr. 255). Her

musculoskeletal examination was negative for numbness or weakness. (Tr. 255-256). A rheumatology referral was pending. (Tr. 255).

In March 2013, Plaintiff underwent an examination with rheumatologist Dr. Waffiyah Afridi. (Tr. 607-608). Dr. Afridi observed that Plaintiff had tender points consistent with fibromyalgia, but diagnosed her with Sicca Syndrome and myalgias and myositis not otherwise specified. (Tr. 608). At her administrative hearing on June 11, 2013, Plaintiff testified that she last worked on October 20, 2011, but quit because her pain was getting worse and worse. (Tr. 33). However, in a January 12, 2013 consult with Dr. Liu, her plastic surgeon, Plaintiff attributed her inability to work to problems with the donor site for her breast reconstruction procedure. (Tr. 605). She reported that the donor site made her uncomfortable and left her as an "abdominal cripple" who was unable to tolerate her prior work. Id. Dr. Liu suggested that wearing a truss might support her trunk to the point where she could return to work or at least be less uncomfortable. Id. Alternatively, he suggested a surgical repair. Id.

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 4. At Step 2, the ALJ found that Plaintiff's degenerative disc disease, affective disorder and obesity were "severe" impairments as defined in 20 C.F.R. § 416.920(c). (Tr. 12). However, at Step 3, the ALJ concluded that Plaintiff's impairments did not meet or medically equal any of the Listings. (Tr. 13). As to RFC, the ALJ determined that Plaintiff could perform unskilled, light work that did not require close or frequent interaction with others. (Tr. 15). Based on this RFC and the opinion of the VE, the ALJ decided that Plaintiff was not disabled at Step 4 because she was capable of performing her past relevant work as a housekeeper. (Tr. 18).

**B. The ALJ Did Not Err at Step 2 By Failing to Identify Fibromyalgia as a Medically Determinable Impairment.**

Plaintiff contends that the ALJ erred at Step 2 by failing to properly and expressly evaluate her claimed fibromyalgia. (Document No. 7 at p. 16).[1] In particular, Plaintiff faults the ALJ for his evaluation of Dr. Afridi's examination report (Tr. 607-608) and his claimed noncompliance with Social Security Ruling ("SSR") 12-2p.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28. Although Step 2 is a <u>de minimis</u> standard, <u>Orellana v. Astrue</u>, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. <u>See</u> <u>Desjardins v. Astrue</u>, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009).

An ALJ may properly base her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe <u>medically determinable</u> physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). (emphasis added). <u>See also</u> <u>Teves v. Astrue</u>, No. 08-246-B-W,

---

[1] Plaintiff filed a Reply Brief on February 13, 2015. Pursuant to the Scheduling Order, a reply brief must only address issues raised in defendant's brief and not fully discussed in plaintiff's original brief. (Document No. 6 at p. 2). It is not an opportunity to raise new arguments. <u>See</u> Local Rule Cv 7(b)(2). While Plaintiff's initial brief (and Defendant's responsive brief) focused on a claimed Step 2 error, her Reply raises a new argument that the ALJ also erred at Step 4 by failing to properly evaluate Plaintiff's chronic pain when making his RFC assessment. (Document No. 12 at p. 1). Accordingly, Plaintiff's Reply Brief does not comply with the Scheduling Order and Local Rule, and the new Step 4 argument raised in the Reply Brief is not properly before the Court for consideration.

2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that she had a "medically determinable" physical or mental impairment(s) that significantly limited her ability to do basic work activity at the relevant time. Id. Furthermore, pursuant to SSR 12-2p (2012 WL 3104869 at *2), a finding that a person has a medically determined impairment of fibromyalgia is warranted "if the physician diagnosed [fibromyalgia] and provides the evidence [ ] describe[d] in section II.A. or section II.B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."

Here, there is no physician diagnosis of fibromyalgia in the record. Neither of the consulting physicians, Dr. Georgy and Dr. Laurelli, identify fibromyalgia as a diagnosis from their review of the records. (Tr. 56-66, 68-78). Further, Dr. Edoro conducted a consultative examination of Plaintiff on April 6, 2012 and did not identify fibromyalgia as either a presenting complaint or a post-examination diagnosis. (Tr. 236-240). While treating Nurse Practitioner Martino assessed the presence of chronic pain syndrome on January 29, 2013, she did not suggest or diagnose fibromyalgia and noted that Plaintiff had a rheumatology follow-up scheduled for March. (Tr. 255).

Plaintiff saw a rheumatologist, Dr. Afridi, on March 11, 2013. (Tr. 607-609). Plaintiff argues that "Dr. Afridi confirmed the presence of a chronic pain syndrome, namely fibromyalgia." (Document No. 7 at p. 14). Plaintiff overstates Dr. Afridi's findings. Dr. Afridi examined Plaintiff for complaints of chronic joint pain but did not diagnose fibromyalgia. (Tr. 607-608). He diagnosed Sicca Syndrome also known as Sjogren's Syndrome and general myalgia and myositis not otherwise specified. (Tr. 608). Although he noted the presence of tender areas "consistent" with fibromyalgia,

he did not diagnose fibromyalgia and he did not specifically identify (by number or location) the necessary tender-point sites to support a formal fibromyalgia diagnosis as required by SSR 12-2p.

Plaintiff faults the ALJ for remaining "rather silent" on the issue of fibromyalgia and for failing to expressly discuss Dr. Afridi's report. However, since the record does not contain any confirmed diagnosis of fibromyalgia from either a treating, consulting or examining physician, the ALJ had no evidentiary basis upon which to evaluate fibromyalgia at Step 2. In addition, it is apparent from the decision as a whole that the ALJ adequately considered Plaintiff's chronic pain complaints. Finally, although the ALJ fails to mention Dr. Afridi by name, he cites to Dr. Afridi's report by exhibit number when evaluating the medical records regarding Plaintiff's treatment for chronic pain. (Tr. 16).

The bottom line is that there is insufficient evidence in the record to support Plaintiff's claim that she has a medically determinable impairment of fibromyalgia. Thus, Plaintiff has shown no Step 2 error on this record.

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 7) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 17, 2015